FILED

MAR 11 2020

PATRICK KEANEY
Clerk, U.S. District Court
By_____ Deputy Clerk

Lamone M. Johnson,
    Plaintiff,
      V.
Dr. Sanders et al
      Defendants,

PLAINTIFF'S OPPOSITION TO DEFENDANTS MOTION TO DISMISS AND SPECIAL REPORT

Case No. CIV-19-269-RAW-SPS

## PLAINTIFF'S OPPOSITION TO DEFENDANTS MOTION TO DISMISS AND SPECIAL REPORT.

Comes Now Plaintiff Lamone M. Johnson (Ms. Lamone M. Johnson) in opposition to Defendants Sanders, Larimer, Martinez, Morrison and Taylor's, motion to dismiss and special report.

Claim 1: Defendants denied Plaintiff's Claim 1, alleging that Plaintiff was not deprived of or denied due process

Claim 2: Defendants denied Plaintiff's Claim 2, alleging that Plaintiff was not deprived of or denied appropriate and adequate medical treatment.

Footnote: 1 - It should be noted that the Plaintiff is a male-to-female transgender whom prefers female pronouns she/her/Ms. See 28 C.F.R. §115.5

Pg.2

Claim 3: Defendants denied Plain-
tiffs Claim 3, alleging that Plaintiff
was not subjected to retaliation
for filing grievances. Defendants deny
that Plaintiff was in Danger.

Claim 4: Defendants denied Plaintiffs
Claim 4, alleging that Plaintiff Was not
Subjected to discrimination.

## PLAINTIFFS ARGUMENT AND AUTHORITY

Claim 1: The Due Process Clause of
the fourteenth Amendment forbids
the State from depriving any Person of
life, liberty, or property, without due
Process of law." See U.S. Const. amend.
XIV, § 1; The Clause has been interpre-
ted as containing two seperate types
of Protection, "Substantive due Process"
and "Procedural due Process" Both are
being applied in this Claim.

(i) Substantive Due Process, The Subst-
antive aspect of the Due Process Clause
Prevents the Goverment from interfer-
ing with Your Personal fundamental
rights in a way that's not "reason-
ably related to legitimate Penological

Pg 93

interests." See Turner V. Safley, 482 U.S. 78, 87 (1987); Plaintiff Ms. Johnson (Moniae) is a Pre-operative Transgender (MTF) Whom was born a male, but strongly identifys as a female. (See Compl., A claim 1, Pg's 5,6,) The Plaintiff was approved at Joseph harp Corr. Center (a med security Facility) to order Cosmetics do to her being a Transgender woman in a males person. (See COMPL. A. Claim 1, Pg 5,6, Exhibit 1) He warden carl beer approved this. Ms. Johnson was transferd to multiple Facilitys after leaving J.H.C.C. (See Compl. A claim 1, Pg 5,6,7) Now only one facility confiscated Ms. Johnson's Cosmetics, That facility was D.C.F. That person was SGT Morrison (Defendant) Whom assessed the Plaintiff at D.C.F. Intake. The defendant SGT Morrison searched the Plaintiff's Property found the Cosmetics and frowned and Stated" oh hell no, he will not walk around at this facility with make-up." (See COMPL. A. Claim 1, Pg 5, Pg 6, Pg 7) Defendants allege that Plaintiff failed to include in her Complaint What a defendant did to the Plaintiff, When the Plaintiff did it, how the defendants actions harmed the Plaintiff and what specific legal rights

Pg.4

the Plaintiff believes the defendant violated. This defense is erroneous, more appropriate terms. Irrelevant. It's clear in the Plaintiff's Complaint that Plaintiff went beyond the scope of describing the events which took place, When indeed the Fed. R. Civ. P. 8.(a) States Provide" a short and plain statement" on these grounds, the defendant's argument has no merit. Now Defendant's cited Nasious V. Two Unknown B.I.C.E. Agents, 492 F.3d 1158, 1163 (10th Cir. 2007), In this case the Plaintiff filed a 42 U.S.C. §§ 1983 listing "Zo individual defendants, as well as scores of John and Jane Doe defendants, in a 42-Page Complaint that is, through much of the document, Often difficult to comprehend" id. Nasious, 492 F.3d 1160 (10th Cir. 2007) In response to this the federal Magistrate Judge Overseeing the Case entered an Order indicating that Mr. Nasious's Pleading did not Comply With the requirements of federal rules of Civil Procedure & which instructs "[E]ach averment of a Pleading shall be simple, Concise and direct," Fed. R. Civ. P. 8(e) Which in this case Plaintiff Ms. Johnson met the Pleading requirements, So this case does not apply to Ms. Johnson's Complaint. Next

PJ5

Defendants allege that "Plaintiff has failed to plausibly plead that Defendants, by virtue of their own conduct and state of mind, violated the Constitution. See Dodds v. Richardson 614 F.3d 1165 (10th Cir.2010) In this case a plaintiff was denied bail due to a County Clerks Policy, The Plaintiff sued the Sheriff in his individual capacity, the Defendant (sheriff) claimed qualified immunity the court held that (1) fact issue remained as to deprivation of arrestee's due process rights"; (2) fact issue remained as to Sheriff's personal involvement causing due process violation; (3) fact issue remained as to Sheriff's deliberate indifference to arrestee's due process right; and (4) fact issue remained as to deprivation of clearly established due process right. id Dodds v. Richardson, 614 F.3d 1165, 1208 (10th Cir. 2010) In Plaintiff's case the Defendants all had Personal involvement in violating Ms. Johnson's rights (see exhibit's 4½, 5, 5(Backside), 61, 62, 41, 18-3, 18-4, 18-5, 18-6, 18-7, 19-1, 19-2, 19-3, 19-4, 19-6, 19-7, 19-8, 19-9, 19-20, 19-21, 19-21 (Backside), 19-22, 19-23, 19-24, 19-25, 19-26, 19-27, 20-1, 20-2, 20-3, 20-4, 20-5, 20-6, 20-7, 22-1, 22-1 (Backside), 22-2, 22-2 (Backside), 22-3, 22-4, 22-5, 23-3, 25-1 25-2, 25-3, 25-4, 25-5, 25-6, 25-7, 25-8,

Pg. 6

25-9, 25-10, 25-11. Decl. La more Johnson, Decl. Marquis Porter.) In all respects ms. Johnson (I) wrote Defendants RTS, sick calls, Inmate request, Grievances, Appeals which put them on "Notice" that ~~they~~ their actions were violating Plaintiff's rights so the Defendants knew of the risks, unconstitutional Practice and disregard Plaintiff's rights (See Farmer V. Brennan, 511 U.S. 825, 842 (1995.); Estelle V. Gamble, 429 U.S. 97 (1976); Gutierrez V. Peters, 111 F.3d 1364, 1369 (7th Cir. 1997.) The state of mind was clearly "motivated by evil motive or intent," "reckless... callous indifference to Your rights." See: Smith V. Wade, 461 U.S. 30 (1983) Plaintiff is entitled to all her requested reliefs. furthermore defendants allege they "followed Policy of O.D.O.C." The Case that defendant cites is exactly a Perfect example of when A Policy violates the Plaintiff rights and the Plaintiff informs You in Grievances that this "Policy" or "custom" violates Your right, You (Defendants) can be held liable when they continue to follow that Policy (See Document 32, Defen. Answer to Plaintiff's Amen Comp. Pg 2, 3) See: Dodds V. Richardson, 614 F.3d 1185, 1194, 1195, 1196, 1197, 1208 (10th Cir. 2010); Ashcroft V. Iqbal, 556 U.S. 662, 129 S.Ct. 1937. 173 L.Ed. 2d 868 (2009.);

Pg. 7

Monell V. Dept of Social Serv., 436
U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611
(1978); "Personal involvement is not limited
solely to situations where a defendant a
defendant violates a Plaintiff's rights by
Physically Placing hands on him." Fogarty V.
Gallegos, 523. F.3d 1147, 1162 (10th Cir.
2008) Personal involvement does not require
direct Participation because § 1983 states
"any official who "causes" a citizen to be
deprived of her constitutional rights can
also be held liable." Buck V. City of
Albuquerque, 549 F.3d 1269, 1279 (10th
Cir. 2008) (quoting) Snell V. Tunnell, 920
F.2d 673 700 (10th Cir. 1990.). This claim
however is substantive Due Process. See
Green V. Post, 574 F.3d 1294, 1301 (10th. Cir.
2009.); We bber V. Mefford. 43 F.3d 1340,
1342 (10th Cir. 1994) ([A] government official
violates an individual's fourteenth Amendment
rights by injuring his or her life, liberty, or
Property with deliberate or reckless intent")
Which in this case Defendant SGT
Morrison injured Plaintiff's Property. by
destroying it when her Supervisor
Cheif doobman told her to return Plaintiff's
Cosmetics (see exhibit Z5R) which by
then SGT morrison Destroyed "my property
when indeed I requested it be Mailed home
Via Postal Mail", ~~~~~~~~~~~~~~ It

Pg 8

was not granted, further more Exhibit 3
was submitted to this court on my behalf
with the Yellow carbon copy which stated
The true written form, Defendants submitted
a falsified document with error, and fraud.
(see et Defendants exhibits 1) Stating i
refused to sign on 5-16-18 and signed on
8-6-18, That is a straight lie. I refused
to sign on 5-16-18 then after speaking to
the SGT, i was told to just "file a RTS to
Medical and if they approve it, i can have it
back." Which i signed after speaking to the
SGT on the exact Same day 5-16-18 (see
exhibit 3) On 6-12-18 chief derman
Stated in a RTS my Items would be getting
returned. I should SGT Morrison (Defendant)
whom still refused to refuse my property
(see exhibit 25-12) The defendant SGT
Morrison credibility should be dismissed
She is not a reliable Witness, for this
relief Plaintiff does Pray, also that Defendants
Defenses Seperate and alternative affirmative
defenses be denied, dismissed, and that Defendants
be denied Attorney fees and costs for defense
of this action, and that the court rules this
motion over Defendants motion to dismiss,
and any other appropriate relief. The Procedural
Due Process is also vice-versa in this case.
Defendants No need to elaborate, Plaintiff
Consequently procked both Due

Pg 9

Process Clauses with Argument and Authority earlier established.

Claim 2: The Eighth Amendment to the U.S. Constitution gives Convicted inmates the right to medical Care. (See Barrie V. Grand County, Utah, 119 F.3d 862, 868-69, (10th Cir. 1997.) ; Estelle V. Gamble, 429 U.S. 97, 103 (1976.). Jail and Prison officals violate the Constitution when they act with deliberate indifference to an inmates serious medical needs (1.) Serious medical need?, The 10th Circut recognized a serious medical need as "has been diagnosed by a Physician as mandating treatment or ... is so obvious that even a lay Person would easily recognize the necessity for a doctor's attention." See: Sealock V. Colorado, 218 F.3d 1205, 1209, (10th Cir. 2000) ; Prison officals must take care of the inmates serious medical needs or else they wouldn't taking care of." [an] Inmate must rely on Prison officials Authorities to treat his medical needs: if the authorities fail to do so, those needs will not be met." Estelle V. Gamble, 429 U.S. 97, 103 (1976) ; Gender Zdentity disorder is a serious medical need. See: Broun V. Zayaras, 63 F.3d 967, 970 [10th Cir. 1995.] [" Prison officals must Provide treatment to address the medical needs of transsexuals Prisoners"]; Cuoco V. Morit Singh, 222 F.3d 99, 106 [2d. Cir. 2000] ; Meriwether V. faulkner, 821 F2d 408

Pg. 10

[7th Cir. 1987.]; Phillips v. Michigan Dept of Corrections, 731 F.Supp. 792, 799. [W.D. Mich. 1990.]; Plaintiff Ms. Johnson was and has always been and is a Transgender (transsexual) woman (See's Comp, exhibits 71, 72, 73)   Plaintiff Ms. Johnson was on HRT (Hormone replacement Therapy) Prior to O.D.O.C. Custody (See exhibits 81, 82, 83, 84, 85, 82 Brookside, 83 Brookside, 13) Plaintiff was on hormone replacement therapy while in the O.D.O.C. Custody as well. (See exhibits 10-1, 10-2, 10-3, 10-4) Ms. Johnson Serious medical need was Known by defendants.

(2.) Officers Knowledge of need? Plaintiff Ms. Johnson filled out "Sick Call Slips" (See exhibits: 12-2, 12-3, 12-4, 19-1, 19-2, 19-3) "Grievances" (See exhibits: 18-5, 18-6, 19-4, 19-5, 18-3, 18-4, 18-7, 19-6, 19-7, 19-8, 19-9, 19-20, 19-21, 19-22, 19-23, 19-24, 19-25, 19-26) "Appeals" (See exhibits 19-22, 18-7) and put officers on notice that they were Violating Plaintiff rights to Serious medical care. the officers met the deliberate indifference claim.

(3.) failure to Provide treatment? : The U.S. Supreme Court ruled that the constitution Prohibits officials from "intentionally denying or delaying access to medical or intentionally interfering with the treatment once Prescribed."

jail

[id. Estelle, 429 U.S. at 104-05] Plaintiff Ms. Johnson' medical records show she was evaluated before her incarceration for gender dysphoria by the Oklahoma County sheriffs office medical and mental health staff. (See exhibits 5&5) the medical official is responsible for information that he gets during his examinations of an inmate. Green V. Branson, 108 F.3d 1296, 1303 [10th Cir. 1997]; review of the inmates and letters from other doctors. Greason V. Kemp, 891 F.2d 829, 831-32, [11th Cir. 1990] (Prior therapist sent letter to prison officals and prison doctor describing inmates current mental health status...)

(a.) You are denied medical attention?; Plaintiff Ms. Johnson was denied having gender dysphoria and/or gender identity disorder. When indeed the psychologist is not a gender identity disorder specialist. She is not qualified to diagnose or deny plaintiff's treatment. Inmates of Allegheny County Jail V. Pierce, 612 F.2d 754, 762-63 (3d. Cir. 1979) (Jail required to provide inmates access to medical personell qualified to diagnose and treat mental disorders) see exhibits 17-1-113, 17-16, 17-13, 17-22-33.)

b. Officials interfere with your prescribed treatment? Plaintiff Ms. Johnson was on estradiol (estrogen) and Spironolactone (Aldactone) these two medications combined are for hormone replacement therapy.

Page 12

Ms. Johnson was prescribed this treatment before she was incarcerated and was continued because it was previously prescribed. (See exhibits 81, 82, 83, 84, 85, B 10-01, 10-2, 10-3, 10-4) The defendants Kay Larimer and Dr. Sanders discontinued Ms. Johnson's HRT Medication. (See exhibit 19-1, 19-2, 19-3, 19-4, 19-5)." It is one thing to fail to provide an inmate with care that would improve his or her medical state, such as refusing to provide sex reassignment surgery or to operate on a long-endured cist. Taking measures which actually reverse the effects of years of healing medical treatment... is measurably worse, making the cruel and unusual determination much easier." Phillips V. Mich. Dep't. of Corrections, 731 F. Supp. 792 (W.D. Mich. 1996); Wolfe V. Horn, 130 F. Supp. 2d 648, 653 (E.D. Pa. 2001) (ruling that where a prison doctor discontinued a patients hormone treatment that she had been receiving for almost a year, there was "at least a fact question as to whether each of the defendants was deliberately indifferent to treating [The Plaintiffs gender identity disorder.) White V. Napoleon, 897 F.2d 103, 106-10 (3d Cir. 1990); Steele V. Shah, 87 F.3d 1266,

Pg. 13

1270 (11th Cir. 1996) (deliberate
indifference for Prison doctor to discontinue
psychotropic medications prescribed
for inmate at Previous Prison on the
basis of one minute interview and
without reviewing most medical needs.

4.) Causation And Injury? Plaintiff
Ms. Johnson Informed Defendants of the
Pain She was experiencing, the transformation
She was enduring, the mental health issues
She are experiencing and the suicide
attempts which Plaintiff have done and
will likely continue to do unless She
is issued her HRT (see exhibits 19-4, 19-27,
19-24.) Plaintiff Johnson is uncomfortable
with her assigned sex at birth and strongly
desires to be a woman. By having breast
A sex change operation (sex reassignment
Surgury) To have her Identification
and birth certificate say "female" means
everything to Plaintiff. To have People refer
to her as female Pronouns means
everything to Plaintiff, Hormone,
Therapy meant everything to Plaintiff
but defendants took that away from
her. Now the Plaintiff suffers from Breast
Pain, Neck Pain, Back Pain, Breast Sagging,
(Droopy Breast) Dry Damaged hair, cramps
as well as Plaintiff's suffers from

14

Severe Gender dysphoria, not wanting to "Get up", move around, or do any daily activites. Farmer V. Moritsugh, 163 F.3d 610, 611 (D.C. Cir. 1998) this Condition, also Called gender dysphoria "is Commonly accompanied by a desire to change ones anatomic sexual features to conform Physically with one's Perception of self. To relieve this gender discomfort, Transexuals may Pursue some combination of hormone therapy surgery and Psychological Counseling. They may also Choose to live in their Preferred gender role by dressing, naming, and conducting themselves in Conformity with that gender." See also maggert V. Hanks. 131 F.3d 670, 671 (7th Cir. 1997) (describing gender dysphoria as "a Profound Psychiatric disorder.") by Stopping the Plaintiff's medication it amounted to deliberate indifference to a serious medical need especially when the defendants Knew of the Irrefutable harm the Plaintiff would face, Greason V. Kemp, 891 F.2d 829, 834 (11th Cir. 1990) Waldrop V. Evans, 871 F.2d 1030, 1033-34 (11th Cir. 1989) furthermore Claim 2 Shall not be dismissed because the defendants met the requirements, Defendants affirmative defenses and requested attorneys Cost and fees Shall be denied. For this relief

Pg.15

Plaintiff does Pray.

Claim 3: To win a failure-
to Protect claim, You must Prove
that the officals whom You are suing
actually Knew about a substantial
risk of serious harm and Yet failed
to respond reasonably.

(1.) Substantial risk of serious harm?
In 1994 the U.S. Supreme Court held
that the Constitution gives inmates a right
to be Protected from assualt by other
inmates. Farmer V. Brennan, 511 U.S. 825
(1994); Plaintiff Ms. Johnson was threated
by the STG "Rollin 60's" because of her
sexual identity. The Plaintiff was
informed by other inmates that the STG
(Security threat group) Paid other inmates
to Kill her and another inmate "on Sight." Plaintiff
Ms. Johnson filed a RTS (Start of the Grievance
Process) to her Case manager-Defendant
Shanna Taylor, informing her of the threat.
(See exhibit 22-1) this threat was a
substantial risk of serious harm. Both
defendents were made aware of this harm.
(See Compl, See declarations of Plaintiff and
inmate Martin's Porter) The Plaintiff is the minority
group "LGBTQIP" Community. Due to this
"Contract" (Hit) being Placed on Plaintiff and

Pg. 16

another inmate, Plaintiff is only safe around that other inmate whom has the same Contract placed on him. Any other inmate could be paid currency to harm Plaintiff. Plaintiff is currently housed at O.S.P. (Oklahoma State Penitentary) Where 2 of these Inmates whom are paid to harm her reside alsoo Farmer, 511 U.S.o at 843 (" I ) + does not matter whether the risk comes from a single source or multiple sources, anymore than it matters whether a Prisoner faces an excessive risk of attack for reasons personal to him or because all Prisoners in his situation face such a risk.") Marsh V. Butler County 268 F.3d 1014, 1029 (11th Cir. 2001) (en banc) (listing multiple conditions of confinement that could give rise to substantial risk of serious harm to Jail inmates); Street V. Corrections Corp of America, 102 F.3d 810, 815 (6th Cir. 1996); Mayoral V. Sheahan, 245 F.3d 934, 939 (7th Cir. 2001); Greene V. Bowles, 361 F.3d 290, 294 (6th Cir. 2004)

(2) Officials Knowledge of risk? Plaintiff Informed both Defendant(s) Shanna Taylor, Ernesto Martirez, in writing of the threat that was made against her. Names of some of the inmates that were paid to

Pg; 17

to harm her. (see exhibits 22-1, 22-2, 22-3, 22-4, 22-5.) these request to staff's, Grievances Put officals on notice of the substantial risks of serious harm. Ernesto martinez was one of the few staff members who was present during the Plaintiff's PMI (Protective measures Investigations) which occured march 5th 2019,

(3.) Officals failure to respond reasonably? On 3-12-19, Plaintiff was falsely accused of a fight, with a inmate whom she was cellies with, and whom also had been threatened by the same STG and was also Paid to be killed. Defendent Ernesto martinez wrote this false misconduct 3-12-19 Plaintiff did not Plead guilty because she did not fight inmate Porter. Mr. Ernesto martinez did not see a fight, Nor did he ever ask Plaintiff or the Inmate marquis Porter was there a fight. (see Plaintiff's and inmate Porters Dec.) Plaintiff fell off bunk trying to turn off the light and hit her nose which led to her nose bleeding. Prior to falling off the bunk Plaintiff and her celly inmate Porter where horse Playing but thats common in Prison, Just laughing, ⬛⬛⬛

Pg 18

Both Plaintiff and Inmate Porter was placed back in the cell; Officers concluded there was no fight. (See Plaintiff's and Inmate Porter Decl.) this happend on 3-6-19. Six days later After the P.M.I was completed Defendant Ernesto Martinez written a false misconduct report stating he "concluded a fight had occured," when in FACT, he never talked to Plaintiff or Inmate Porter or CPT's, LT's, SGT's, C.O's to determine if a fight had "occured." So how could he conclud a fight had occured? When No Investigation was done. The merriam-Websters's Dictionary AND Thesaurus defines Investigation as follows: "Investigation N: The action or Process of investigating; esp: detailed examination or a searching inquiry. (Merriam-Webster's, Dictionary AND Thesaurus, 576 (2006).) Mr. Ernesto Martinez did not examine, search inquiringlly. So his "Conclusion" was not based on merit, facts, but "evil and sadistic joys." (See Plaintiff's and Inmate declarations) because of his _phobic; Homophobic behavior. _duct was writteng Plaintiff was thereated by the Defendent _f her and Inmate Porter did they would be seperated

Pg. 18

Both Plaintiff and Inmate Porter was placed back in the cell. Officers concluded there was no fight. (See Plaintiff's and Inmate Porter Decl.) this happend on 3-6-19. Six days later After the P.M.I was completed Defendant Ernesto Martirez written a false misconduct report stating he "concluded a fight had occured" When in FACT, he never talked to Plaintiff or Inmate Porter or CPT's, LT's, SGT's, C.O's to determine if a fight had "occured" So how could he conclud a fight had occured? When No Investigation was done. The merriam-Websters's Dictionary AND Thesaurus defines Investigation as follows: "Investigation N. The action or Process of investigating; esP: detailed examination or a searching inquiry. (merriam-Webster's, Dictionary AND Thesaurs, 576 (2006).) Mr. Ernesto Martirez did not examine, search inquiring. So his "Conclusion" usus not based on merit, facts, but "evil and sadistic motives." (See Plaintiff's and Inmate Porter's declarations) because of his transaPhobic; Homophobic behavior. this Misconduct was writteng Plaintiff Ms. Johnson was threated by the Defendant martirez that if her and Inmate Porter did not "Plead guilty" they would be seperated

Pg 014

and their P.M.Z.'s would be removed
and both would be subjected to
assault or Killed by the "Paid" inmates.
Plaintiff told Martirez that is a Due
process violation of the 14th Amendment
to the U.s. Constitution. Plaintiff
plead Not guilty intially, but after
Ernesto Martirez threats Plaintiff was
afraid of her life so she plead guilty.
Znmate Porter did not plead guilty and was
moved to a whole nuther Podo Ernesto
Martirez stated "Z can't Protect bitchs
and fags." "Z'm not your baby sitter"
You do the herd crimes, You do the herd
times." By removing Znmate Porter from
the cell Ernesto martirez placed both
in a serious risk to be Killed Due to
Defendants martirez not responding
reasonably Plaintiff is Now subjected to
being Killed. responding reasonably would've
been investigating this situation throughly,
Not seperating both inmates whom had the
same contract (hit) on there head. Ernesto
Martirez despises the [ LGBTQRP Community ]
he is trans and homophobic. Why else would
he threat the Plaintiff to plead guilty or suffer
irrepable harm ?, the statue of limitations
for the misconduct ran out, the misconduct
was written a week later (3-12-19.) This
itself is not a "reasonable response." AN Znmate

Pg. 20

Rossco Craig, a bi-sexual male was murdered on 6-24-19, ON FD-213 (two doors down from Plaintiff) he ~~refused~~ repeatedlly told Ernesto Martinez he did not feel Safe ceith a celly because his last celly hogtiled him and beat him up. Defendant told Mr. Craig that if he didn't take a celly he would be written up and his level 4 dropped and his "good days" would be talking and he wouldn't go home in 5 to 6 months. Rossco Craig took a celly and was murdered on 6-24-19, Mr. Ernesto Martinez has a pattern of not responding reasonablly when LGBTQZP Inmates are Znvolved. He did not take Plaintiff's a Transgender Own safety views into Serious Consideration. See 28 C.F.R. § 115.42(e) as well as he did not "communciade effeetivelly and Professionallly with inmates, including lesbian, gay, bi-sexual, Transgender, intersex or gender Non-Conforming, inmates." See 28 C.F.R. § 115. 31(a),(g) He did not take Plaintiff's own Perception of assualt or safetly views into serious consideration.

4.) Causation and injury? Mr. Martinez Stated he didn't "Protect bitches and fags." then after that he stated that if the plaintiff did not "Plead guillty" to a false misconduct report that her P.M.I would be removed and she

Pg 22

would be subjected to violence. So
to answer the Defendant's denial,
Ms. Johnson is in real danger.

(i) The first Amendment Prohibits Jail and
Prison Officals from retaliating against
inmates who report complaints, file
Grievances, or file lawsuits. See: Penrod
V. Zavaras, 94 F.3d 1399, 1405 (10th Cir. 1996.)
; Crawford-EL V. Britton, 523 U.S. 574, 588
(1998) (stating that "[T]he reason why ...
retaliation offends the constitution is that
it threatens to inhibit excersice of
the Protected right.") "Government
actions, which standing alone do
not Violate the Constitution, may none-
theless be constitutional torts if motivated
in substantial Part by a desire to Punish
an individual for exercise of a constitutional
right." Thaddeus-X V. Blatter, 175 F.3d
378, 386 (10th Cir. 1999.) (en banc);

To Prove a retaliation claim, You
must show three things?

(1) You were doing something You had a
Constitutional right to do? "Protected
Conduct?" Plaintiff Ms. Johnson filed
a request to staff (which is the
beginning of the O.D.O.C. (Grievance

Pg 22

Process.) on and to Shanna Taylor on 1-25-19, (see exhibit 22-1) Shanna Taylor (defendant) responded 2-18-19, on 2-21-19, Plaintiff turned the RTS into A Grievance (see exhibit 22-2) Because defendant Shanna Taylor did not do all 11 names Plaintiff listed. On 3-14-19 the "grievance Decision was recevied, concluded (see exhibit 22-3)

(2.) what the Prison official(s) did to you, which is a "adverse action" was so 'bad that it would stop an "Average Person" from continuing with their suit? Shanna Taylor supervisor Unit manager Ernesto Martinez wrote a false Mis conduct on Plaintiff and her old cell mate marshi's Porter (see exhibit 23-3) alleging that there was a fight. In this offense report Defendant martinez states "on the above date and approximate time, Unit manager martinez concluded an investigation which revealed that occured between inmate Lamore ate Porter." How can you "conclude" stigation when ̶o̶̶f̶f̶i̶̶c̶e̶ you nce came and spoke with iff Johnson and Inmate Porter? nesto martinez had no direct ement in the "alleged fight." why ?

Pg. 23

because there was never a fight.
Defendant Shanna Taylor and Ernesto
Martinez came to Plaintiff Johnson's
cell and told her and Inmate Porter
that if they did not plead guilty? they
would be moved and their P.M.I. packet
would be removed and that they both
would be subjected to Violence.
Plaintiff Johnson plead guilty out of
fear. ( Plaintiff later filed a RTS on
and to Ernesto Martinez about these
events the RTS somehow disappeared
and was never returned to the Plaintiff.)
Porter(the cellmate) plead not guilty. This
Infuriated Ernesto Martinez and he
Moved Inmate Porter and stated he "don't
protect bitches and fags." This all took
place on 3-14-19. (See's Plaintiff and
Inmates Porters Decl. )

(3). There is a causal connection?
On 3-14-19 the Grievance Decision
was Decided. On 3-12-19 the false
misconduct was written by Ernesto
Martinez (Defendant) (Shanna Taylor's
Supervisor.) Prior to the Grievance
Decision Shanna Taylor "Investigated"
the "matter" (See exhibit 22-3) This is
the Same exact day that Shanna Taylor
and Ernesto Martinez came to threat

pg. 24.

Plaintiff and Inmate Porter to Plead guilty
or be subjected to violence. (See declaratins)
Wherefore Defendants retaliated against
Plaintiff for filing grievances, If No Grievance
would've been filed? No false misconduct
would've been written. Defendants requested dis
missal should be denied and relief
also denied and Affirmative defenses denied.
This relief Plaintiff does Pray.

Claim 4: To win a equal Protectin
Claim Van must show that Van are
being treated differently than other Prisoners
and that Your treatment is not rationally
related to a legitimate governmental
Purpose.

(1) Different treatment? In 1996 the U.S.
Supreme Court ruled a Colorado state
law unconstitutional, that Prohibited
regulations Protecting gay People from discrimina-
tion See: Romer v. Evans, 517 U.S. 620
(1996) Defendant Ernesto Martirez has
written false misconducts on Plaintiff, Placed
Seperation against Plaintiff and Inmate Marquis
Porter for filing grievances and being LGBT
Q.I.P Community based Inmates. (See Plaintiff
and Inmate Porter's Decl.) all because
of those two factors Plaintiff's were
treated differently. Defendants Statement alone

Pg 25

"I don't Protect bitches and fags," Is
Sufficent enough to Prove the discrimination
"diffrent treatment" Part.

(2.) Treatment is not rationally related
to a legitmate governental Purpose?
Defendant's Conduct was motivated
by Transaphobic and Homophobic mind
Set. (See decelerations) Not rationally
related to a legitmate governental
Purpose. See: Doe Vs Sparks, 73 F.
Supp. 227 (W.D. Pa. 1990.); McCleskey, V. Kemp, 481 U.S. 279, 292, 107 SCt
1756, 1767 (1987) (noting that a
successful equal Protection Claim must
prove that there was Purposeful discrimination.)
Lawrence V. Texas, 539 U.S. 558, 567
(2003) Wherefore Defendent's Conduct
was "evil and sadistic," So he's
motion to dismiss Shall be denied,
and all other relief. This relief Plaintiff
does Prall.

SPecial RePort Findings Response
from Plaintiff:

(1.) Plaintiff Ms. Johnson arrived
from DOC Conners Correctional Center
(D.C.C.C.) to Davis Corr, Facility,
And was allowed to Purchase Cosmetics

Pg: 26

While at J.H.C.C (Joseph Harp Corr. Center) which was the second facility Plaintiff was at, Lexington Corr. Center (L.C.C.) the third, Dick Conners Corr. Center (D.C.C.) the fourth, Davis Corr. Facility (D.C.F.) the fifth. SO 2f these "Cosmetics were not "allowed" to transgender inmates they would've never been (1) approved at O.D.O.C. Facility by the facility head. (2) Before arriving to Davis Corr. Facility, the 2 Previous O.D.O.C Facility Property officers would've confiscated these cosmetics, it should be noted that CCA is a Private owned facility whom is clearly not familiar with O.D.O.C. Policy, 2f so they would've never told Plaintiff off her hormone replacement therapy. (See Exhibits 84, 83, 83 Backside, 82, 82 Backside, 85, 91, 91 Backside, 10-1, 10-2, 10-3, 10-4, Exhibit 13, 20-5) Plaintiff Objects to Defendants Typo-error on the Report of Review of fact. basis of Claims Asserted in Civil rights Complaint, Allegations made by Plaintiff Johnson, Count 1, The head Comptroller in fact is who made it Possible for Plaintiff to order these Products (See exhibit 26-1) (2) response to Investigations. Defendant's clearly state that Plaintiff Ms. Johnson arrived with 3 cosmetics on her Property. (See exhibit 2,3) (See defendants

Pg. 27

Exhibit 1) the Same Policy Defendants State, are not allowed ~~are~~ for the Property officer to destroy or take anything unless it is contraband, Contraband is considered as follows: (See Defendant exhibit 1, OP-030120, Inmate Property, Pg 3, E. Possession of Contraband. "Any Item(s) found in the inmates possession, that is 'Not' listed on his/her 'Property form' will be considered Contraband ...", Plaintiff Cosmetics were on her Property list see exhibit 2 (Plaintiffs exhibit), Now the second Part of the Possession of Contraband is as follows "2. Any Item(s) found listed on the Property form that has distorted or altered Markings or that has been substantially (either internally or externally) Modified from the Manufactures ... will be considered Contraband." Plaintiff passed both Contraband test wherefore Plaintiff Cosmetics should have never been considered Contraband. Defendants considered Plaintiff's Cosmetics "Contraband" because of their "Personal hatred" towards Transexual, Transgendered People. Defendant Morrison Stetement alone" Oh hell no, he will not walk around at this facility with make-

Pg 28

up." Proves the evil and Sadistic motives,
Then when Plaintiff showed (exhibit 1) RTS
from Warden Carl bear at J.H.C.C.
that she was approved these items to
Purchase, that they in fact was not
Contraband Should've been enough for
Plaintiff to receive her Cosmetics,
but because Plaintiff was a
Transgender woman in a males Prison
the Discrimination occured. It Should
also be noted that O.D.O.C. Policy
Contradicts themselves (OP-140147
Management of Gender Non-Conforming
Inmates, IV, Reasonable Accommodations
for Gender NonConforming Inmates, B.
Inmate Property "Inmates will be Provided
Standard ODOC attire in accordance
with OP-030120 entitled "Inmate Property."
Gender NonConforming inmates may receive
Consideration for 'underguments' or
'other Gender NonConforming Property'...
Any approved Property will be allowed at
Subsequent facilities' Should the inmate
'transfer' unless the approval has been revoked.")
(See Plaintiff's exhibit 1) I was approved.
(for above Policy Quote See Plaintiff's
exhibit 25-13,14,15,16) ~~~~ The Plaintiff
Objects to Defendant's lie stating
that Plaintiff Signed the notice on Apr 6 2018,
Plaintiff Signed Notice on 5-16-18. (see

Pg:29

exhibit 3 Carbon Copy.) Plaintiff
Stated she wanted her Property
Sent home if anything (see exhibit 3
Carbon Copy.) Plaintiff was told by
Cheif corman (see exhibit 25-12)
that Plaintiff would receive her items.
Defendant morrison refused to relinquish
the items. The defendants allege that
if Plaintiff was not happy with SGT morrison
decision, that Plaintiff should have submitted
a Property claim to the Property officer
who in fact is SGT morrison (the
defendant) their argument has no
logical sense, with all respect the
Defendants superior staff Chief stated
to return these items, why weren't they
returned. Because Defendants had
"Personal feelings" towards Plaintiffs
lifestyle, Once Plaintiff filed a Grievance
Plaintiff was told Property issues at
Private contract facility are not
Grievable. See Defendants, Exhibit 8,
Pg 4, Cheekbox 5.) when a issue
is not "Grievable" It means no "available
remedies" exist. See: Dole Vs Chandler,
438 F.3d 804, 809, 812 (7th cir. 2006.);
Labounty V. Johnson, 253 F. Supp 2d
496, 502-04 (W.D.N.Y. 2003); Aiello
V. Litscher, 104 F. Supp. 2d, 1068,
1074 (W.D. Wis. 2000) Plaintiff is a

PJ30

O. D. O. C. Inmate Whom was housed at a Private Contracted Facility, O.D.O.C have Policy and Procedures given to Vun Upon arrival, Davis Corr. Facility does noto One would assume that Vun Grieve (exhanst) Just like at other Oklahoma Prison facilits. But CCA failure to Provide this "Policy" made the remedy unavailable to the Plaintiff. Westefer V. Snyder, 422 F.3d 570, 580 (7th Cir. 2005); Shakeed-muhammed V. DiPaolo, 393 F. Supp. 2d 80, 97 (D. Mass. 2005) ("Having failed to abide by the Strictures of their own regulations, defendants should not be allowed to Claim Plaintiff's Non compliance as a bar."); miller V. Berkebile, No. 3007-CV-0712-B ECF, 2008 WL 635552, at *7-9 (N.D. Tex. mar. 10, 2008); Gobert V. Lee County, 510 F.3d 1312, 1322-23 (11th Cir. 2007) (holding grievance appeal was not an available remedy where prisoners were not informed of its existence and had no way to find out.) Plaintiff appeared this matter Per O.P.O.C Policy 090121 (see exhibit C4) The ACA ruled ("out of-time") because Plaintiff was plce

B 031

ZNS.HU on July 4th 2018 (See Affidavit of Plaintiff) And did not receive her Property until a week or two later, once Plaintiff received her Property she immediately filed the Appeal, It should be Noted also that At this Point in time Plaintiff Ms. Johnson wishes to supplement her Complaint Pursuant to Fed. R. Civ. P. 15(a), 15(d) To Add Terry Underwood, and 22 More defendants, 7 Of those newly added Defendants are employed at CCA (Davis Corr. Facility) After Plaintiff filed her lawsuit she was subjected to more retaliation (See Affidavit of Plaintiff) The EHR record states that on 3-26-18, I spoke with a Bethany Wagener Telling her that Patricia Jones evaluated me and did indicate that Patricia Jones stated I had Gender dysphoria and that is why Dr. Moore initiated estrogen. This is another lie and game that these prison officials do at Q.O.P Co. On 3-26-18 I filled Out a "sick call" to be evaluated for undergarments (see exhibit 12-1) on 3-26-18, the physician Bethany Wagner stated that she would Not Order my undergarments, I was made aware by mental health staff →

Pg32

"A J" re put a order in my
medical chart. The Dr. Wagner
Stated that i needed to be evaluated
by Patrica Johes. I showed her my
medical records were. i was evaluated
at Oklahoma County Jail that i was
on Hormone replacement pryor to O.D.O.C.
that i was already evaluated at Oklahoma
County that i was prescribed Estradiol,
Spironolactone, at Oklahoma County Jail
and once arrived at O.D.O.C was
continued on them. I Never said
Dr. Moore initiated my Hormone replacement
therary. I clearly was on them before
i even arrived at J.H.C.C. (when Dr.
Moore works) (see exhibits 81, 82,
82 Backside, 83, 84, 85, 91, 91 Backside
10-1, ) That is evidence that O.D.O.C
officals lie on medical records, which is
how Plaintiff Ms. Johnson's medical
rights have beeen violated and still
currently are at another facility, this
is why Plaintiff wishes to add/supplement
her complaint. Because of this EHR
system the serious medical needs of
Plaintiff will not be met unless this
case goes to tryal. Please Note that the
Policy defendants cite OP-140147 is the
August 27, 2018 revised edition, which went
in effect Aug. 27, 2018, Defendant Sanders

Pg. 33

Ray Larimer came to the conclusion to discontinue Plaintiff's Hormone replacement therapy on 5-23-14, so the policy at that time stated the following "Hormonal treatment (1) Hormonal treatment of inmates with Gender Dysphoria (000 (a) has been confirmed by a qualified mental health professional based on the diagnostic criteria of the Diagnostic and Statistical Manual of mental disorders. (b) A female to male Hormonal Therapy risk and information form 000 is read and signed by the inmate and scanned into the inmate's electronic health record. (2) Once the above steps have been completed, hormonal treatment may be considered by the qualified medical provider if the following (a) Hormonal treatment was initiated prior to incarceration..." (See exhibit (1) 20-5) this policy was the one in effect at the time Plaintiffs rights were violated (6-5-17, latest ed. on 5-23-18) (1) Plaintiff met the 1st criteria, she was diagnosed by a qualified mental health professional at Oklahoma County (see exhibit 5) (2) Plaintiff signed a male-to female Hormonal therapy risk and Information form at first facility (N.F.C.C.) North fork Corr. Center (see exhibit 91, 91

Pg334

Backside.) And Plaintiff met the
third criteria. (3) Plaintiff hormones
treatment was initiated Prior to incarceratin.
(See exhibits 81, 81, 82 Backside, 83, 83 Backside,
84, 84 Backside, 85, 13) However Plaintiff
was on her hormone replacement therapy
for 2 years and 8 months uninterrupted
while in D.O.C. (exhibit 10-1, 10-2, 10-3)
But also Note that even though Dr. Patricia
Jones (a unqualified mental health Professional
Not entertained in Gender dysphoria, See
exhibits 17-21-32, 33-49.) maliciously
lied about Plaintiff's criterium for gender
dysphoria she never concluded her
Report to discontinue ~~her~~ Plaintiff's
Hormone replacement Therapy. (See
exhibit 14-9) Defendants did that on
their own accord, why? because of Personal
feelings towards the Plaintiff's lifestyle
as a Transexual woman in a males
Prisons Defendants ~~alleged~~ that Unit
Staff did not discriminate or retaliate
against Plaintiff this also a lie.
(See Plaintiff, and Inmate Marquis
Porter Deel.) Plaintiff filed a RTS
(Start of Grievance Process) and
It was never returned and still have
not been returned to Plaintiff. Plaintiff
requested It on multiple occasions
But the RTS is never sent. The Law library

pg. 35

at D.C.F. and Terry Underwood and
mail room (where unit manager martinez
wife works) is all in cahoots together
with Interfering with Plaintiff's mail,
Grievances, The Plaintiff can and will
show this court the games that
the defendants play when it comes to
exhausting administrative remedies.
Grievance No. 2018-160 is exhausted
because If a issue is not "grievable"
then there is "No Available remedy."
Turner V. Burnside, 541 F.3d 1077, 1084
(11th Cir. 2008) "remedies that rational
inmates cannot be expected to use are not
capable of accomplishing their purposes
and so are not available." Dole
V. Chandler, 438 F.3d 804, 811-12
(7th Cir. 2006) ; Owens V. Keeling,
461 F.3d 763, 769, (10th Cir. 2006)
Plaintiff still Appealed though Grievance
was denied. Appeal was also returned
unanswered. Terry Underwood has
lied under oath. Terry Underwood states
that Plaintiff Johnson Never filed
Grievances based on Discrimination
and retaliation? When indeed Plaintiff
has (see exhibit's 2 & 3-7 see
Terry Underwood's Affidavit) Plaintiff
asked that Ms. Underwood be Persecuted
for Penalty of Perjury and Affidavit

No. 36

Dismissed as Constructed fraud.
Grievane No. 2018-166³ Plaintiff was
informed on May 23rd 2018 by Ray
Larimer and Dr. Shepard that Patrica
Jones Denied her having Gender dysphoria
and that ms. Jones stated "basically to
discontine" Plaintiff's "hormores." . Plaintiff
immediatly filed a RTS to Dr. Patrica
Jones (See exhibit 18-5) where Dr. Jones
basically stated "You need to discuss
Your diagnosis with Your Primary QMHP.
all medication decisions are made by
medical." Plaintiff's QMHP is Dr.
Shepard, the Same Dr. Shepard whom
with Defendant Ray Larimer Informed
the Plaintiff they would be stoping her HRT
and which Plaintiff shared medical records
(See exhibits 81,82,83,84,85,82 Backside,
63, Backside 13), (See also 10-1, 10-2, 10-3,
10-4) which they stated it was Not them
But Patrica Jones who stated to discontinue
Plaintiff's hormore therapy, When in fact
ms. Jones report stated No such
things (See exhibit 14-9) So Speaking
With Dr. Shepard was already done, that
is how Plaintiff found out about the denial
of her having Genderdysphoria, Plaintiff didn't
actually get the report until 5-2-19 (See
exhibit 19TS) when Plaintiff had money on
her account to get the records. That is

Pg 37

When it all came out that Dr. Sanders, Kay Larimer decided to deny my estradiol, Spironolactone Spirona lactore ( See exhibit 19-2, 19-4, 19-5, 19-6) Plaintiff did file a Grievance 2018-166, which was returned ungrieved for the following reasons. ① "An Answered request to staff form addressed to the correct staff member must be attached." A Answered "RTS" was attached to and from the correct staff member ( See exhibit 18-5, 18-1, 18-2) this is one of the few games these staff play. ② "You are on Grievance restriction, proper documentation not included." Plaintiff had No idea You could be placed on a "Grievance restriction." ( See exhibit 18-1) ③. Least, Not best least the officials have the power to return Your grievance back for something Not even in policy by checking "Other." ( See exhibit 18-2) Plaintiff appealed to ARA (O.D.O.C) which is the finale stage and her Appeal was returned un answerd by the ARA, claiming Plaintiffs Appeal was "out of time." ( See exhibit 18-7) Plaintiff recived response from reviewing authority (Defendant Kay Larimer) on July 5th 2018. ( See exhibit 18-1) ARA responded July 26 2018. ( See exhibit 18-7) When indeed

Pg 38

Oklahoma Dept of Corr. Policy states
"The reviewing authority may choose to
extend the submitting period up to 60 days
for good cause" (see exhibit 21-6, Vol A, Z.)
Defendants and officals clearlly don't follow
their own Policies, all O.P.a.C Policy's
Contradict one another. Miller V. Norris,
247 F3d 736, 740 (8th Cir. 2001)" We
believe that a remedy that Prison officals
Prevent a Prisoner from 'utiliz[ing]' is
not an 'available remedy' under § 1997e (a)..." j
Labounty V. Johnson, 253 F. Supp. 2d 496,
502-04 (W.D.N.Y. 2003) (holding grievance
Supervisors alleged failure to follow Procederes,
Preventing Plaintiff's appeal, barred Summary
Judgement for Non-exhaustion.") j Braunell
V. Krom, 446 F3d 805, 317-13 (2d. Cir 2006)
(Prison officals didn't follow their own rules.)
This applies to All the "allege" NON-exhaustion
requirements. This case has lot's of exhibits,
Paperwork that still have not been copyied
because of the Prison's refuse to copy
exhibits claim it is "not of a legal nature."
So Plaintiff asks this Court to allow
discovery to Prove that she exhausted
administrative remides and that Defendants
Policy is inadequate, Non Consistent and
that offical Play games when it comes
to exhausting administrative remedies
Also Plaintiff asks this Court to also

Issue a order So that Plaintiff may obtain Affidavits from Inmate Marquis Porter #786756 whom is located at the Lawton Corr. Facility, 8607 SE Flowermound Rd. Lawton OK 73501, Through legal correspondence since Plaintiff is appearing "Pro Se", under Fed. R. Civ. P. Rule 56(f) He Judge has the Power to "issue any other just order." also to interview Inmate Porter through telecommunication and any and all Defendents witnesses. also to order a outside examination by a outside Doctor-Specialized in Gender Dysphonia. Amanda Kleeman, LPC, NCC, MS A Specialist In Gender Therapy (918) 779-3754. Kelley Bronnell Blair, LPC, MS, Cm III—The diversity center of Oklahoma Inc.-works with LGBTQ Communities (405) 622-3191, Christopher D Allen, Psychologist, PHD, LPC, LADC. (405) 266-1836, Plaintiff ask the court to issue a order to one of the above specialist to distinguish that the Defendants are making up this lie that Plaintiff is not gender dysphoric. Pursuant to Fed. R. Civ. P. Rule 35. This relief Plaintiff does Pray.

~ Defendant Martinez Affidavit is also a lie under oath, Plaintiff was Discriminated against and retaliated against by unit manager Martinez, Terry underwood and unit manager Martinez keep alleging that they had No visibility of any Grievances. I never stated he "seen" a grievance, I stated he retaliated and Discriminated against me for filing Grievances and being LGBTQI. (Transgender) (See Plaintiff's declarations, Inmate Porter's Declaration) No officer of any kind seen me and Inmate Porter "fighting" Nor engaged in "horseplay!" He CO asked me how I got "Scratches" I stated me and my Celly were "horse playing". So how can The Defendant issue a Non. association, when O.D.O.C. Policy Prohibits Staff Non-Associations from being issued on "minor altercations" that the inmate must →

request it. Neither me or my cell requested seperation on each other. This is how Van Know this is Discrimination and retaliation. The Defendant Martinez clearly does not follow D.O.C. Policy or their own Policy's, so how can they follow the supreme law of land??? Please See: Declarations of Plaintiff and Inmate Porter. Defendant claims he could've never known about a grievance when indeed he is Defendant Shanna Taylors supervisor, whom "Investigated" Grievance # 2019-00102, which was deecided on 3-14-19 the same day Defendant Martinez AND Shanna Taylor came to FD-210 and threat Plaintiff And Cellmate. (See Exhibit 22-3, Plaintiff and Inmate Marquis Porter's Decl.) which in fact was retaliation And Discrimination. Blue and white Dont like (paperwork, Exhibits,) Not No frivolous Exhibits, whether Defendants followed O.D.O.C. Policy or not they were made aware through RTs and Grievances that their actions were violating Plaintiff's constitutional rights, which Defendants continued to do, Lastly Plaintiff would like to point out that these Defendants and O.D.O.C. Hide behind this Grievance Policy like it is Kryptonite to A §1983 civil rights Complaint. All they have to do is Mark Var Grievance as "Out-Of-time" "Un answerd", point out a million mistakes. Even a court gives Pro se Inmates leeway →

Pg. 41

To not be held as the same standard as a Attorney licensed in law. See: Haines v. Kerner, 404 U.S. 519, 520-21 (1972) (stating that prisoner should be allowed opportunity to offer proof unless it appears beyond doubt that prisoner can prove no facts to support his claim.) & Robson v. Cwright, 459 F.3d 241, 248 (2d. Cir. 2006) ("We construe complaints filed by pro se litigants liberally and interpret them to raise the strongest arguments that they suggest.") (internal quotations and citations omitted). Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991) ("A pro se litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers. We believe that this rule means that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements. At the same time, we do not believe it is the proper function of the district court to assume the role of advocate for the pro se litigant.") So why should the defendants Grievance procedure be any harder, stricter??? A lawyer couldn't even pursue a Grievance correctly because the defendant's Grievance allows your Grievance to be dismissed by reasons not even in policy by checking "other:" Basically the defendants use this Grievance procedure as a "Get-out-of-lawsuit-free card." which in fact would defeat the purpose of a 42. U.S.C.§ 1983 civil rights complaint, which would also defeat and violate the U.S. constitution of the first, fifth and ~~fourteenth~~ Fourteenth which together makes the "access to courts" right.

The question in this case is whether, by enacting the exhaustion requirement in the Prison litigation reform Act of 1995 (PLRA), congress intended to authorize State correction officials to impose a comparable

Pg. 42

limitation on Prisoner's constitutionally protected right of access to the Federal Courts. Congress enacted the following exhaustion requirement in the PLRA:

"No action shall be brought with respect to Prison conditions under section 1983 of this title, or any other Federal Law, by a Prisoner confined in any jail, Prison, or other Correctional facility until such administrative remedies as are available are exhausted" 42 U.S.C. § 1997 e(a).

This Provision requires Prisoners to exhaust informal remedies before filing a lawsuit under federal laws. They must file an administrative grievance and, if the resolution of that grievance is unsatisfactory to them, they must exhaust available administrative appeals. The Statute, however, says nothing about the reasons why a Grievance may have been denied. It does not distinguish between a denial on the merits and a denial based on Procedural error. It does not attach any significance to a Prison Official's decision that a Prisoner has made Procedural mistakes in exhausting administrative remedies. In the words of federal courts Jurisprudence, the text of the P.L.R.A. does not impose a Sanction of waiver or Procedural default upon those Prisoners who make such Procedural errors. See: Engle v. Issac, 456 U.S. 107, 125—

Pg43

126 (1982) (explaining that "the problem of waiver is separate from the question whether a state prisoner has exhausted state remedies.") The plain text of the PLRA simply requires that "such administrative remedies as are available" be exhausted before the Prisoner can take the serious step of filing a federal lawsuit against the officials who hold him in custody. However the defendants and their successors, employees Concludes that the P.L.R.A. exhaustion requirement requires "proper exhaustion." The absence of textual support for that conclusion is a sufficient reason for rejecting it. Unlike 28 U.S.C. § 2244 (d)(2), a tolling provision of the Antiterrorism and Effective Death Penalty Act of 1996, which was signed into law just two days before the PLRA, 42 U.S.C. § 1997 e(a) lacks any textual requirement of "proper exhaustion" See Artuz v. Bennett, 531 U.S. 4, 8, (2000) (explaining the importance of the textual requirement that an application be "properly filed" under 28 U.S.C. § 2244(d)(2).) Instead, just as in the habeas context, under the PLRA a prisoner "who has [procedurally] defaulted his federal claims in [ a state prison Grievance proceeding] meets the technical requirements for exhaustion; there are no state remedies any longer 'available' to him." Coleman v. Thompson, 501 U.S. 722, 732 (1991) Accordingly, under the plain text of 42 U.S.C. § 1997 e(a) plaintiff satisfied her duty to exhaust available administrative remedies before filing a federal lawsuit, the defendants dis-

Pg. 44

regard of the Plain text of the PLRA is especially unjustified in light of the backdrop against which the Statute was enacted. We Presume, of course, that Congress is familiar with court's precedents and expects its legislation to be interpreted in conformity with those Precedents see Edelman v. Lilnenburg College, 535 U.S. 106, 107, 117 (2002); Porter v. Nussle, 534 U.S. 516, 528 (2002); North Star Steel Co. v. Thomas 515 U.S. 29, 34 (1995) This strong Presumption is even more forceful when the underlying Precedent is "unusually important" Gebser v. Lago Vista independent school Dist, 524. U.S. 274, 294 (1998) (quoting Cannon v. University of Chicago, 441 U.S. 677, 699 (1979)) Consistent with this Presumption, if we have already provided a definitive interpretation of the language in one Statute, and Congress then uses, nearly identical language in another statute, courts will give the language in the letter statute an identical interpretation, unless there is a clear indication in the text or legislative history that the court should not do so. See United States v. Wells, 519 U.S. 482, 495 (1997) Under these elementry Principles of Statutory interpretation, the PLRA's exhaustion requirement does not incorporate a procedural default component. The PLRA's exhaustion provision is essentially identical to that of

Pg. 45

the habeas corpus statute, a provision in the federal habeas statute, first enacted in 1948 as a codification of a previous judge-made rule, (see O'Sullivan V. Boerckel, 526 U.S. 838, 850-853 (1999) (STEVENS, J., joined by GINSBURG and BREYER, JJ., dissenting) (tracing history of exhaustion requirement in habeas law).) bars relief "unless it appears that... the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. §2254(b)(1)(A). The PLRA similarly bars judicial relief "until such administrative remedies as are available are exhausted." 42 U.S.C. §1997 e(a). The only noteworthy distinction between the two provisions is that 28 U.S.C. §2254 b(1)(A) uses the word "unless" whereas 42 U.S.C. §1997 e(a) uses the word "until". If any thing, this distinction suggests that the exhaustion requirement in the PLRA is less amenable to a waiver sanction than the comparable requirement in the habeas statute: The word "until" indicates a temporal condition whereas the word "unless" would have been more appropriate for a procedural bar. Notwithstanding the use of the word "unless" in 28 U.S.C. §2254(b)(1)(A). The Supreme court has held that state-court remedies are "exhausted" for the purposes of the federal habeas statute so long as "they are no longer available, regardless of the reason for their unavailability." Wainwright V. Sykes, 433 U.S. 72, 97 ~~~~~ (1977);

Pg46

Mitchum V. Foster, 407 U.S. 225, 242 (1972);
Muhammad V. Close, 540 U.S. 749, 751. (2004);
James V. Kentucky, 466 U.S. 341, 348 (1984), Murray
V. Carrier, 477 U.S. 478 (1986).; see Coleman,
501 U.S. at 731.; Castille V. Peoples, 489 U.S.
346, 351 (1989); Teague V. Lane, 489 U.S. 288,
298 (1989); Engle, 456 U.S. at 125; Humphrey
V. Cady, 405 U.S. 504, 516 (1972); Fay
V. Noia, 372 U.S. 391, 434-435 (1963). The
Purpose Of a 42 U.S.C. § 1983 action such
as that filed by Plaintiff is not to obtain
direct review of an order entered in the grievance
procedure, but to obtain redress for a alleged
violation of federal law committed by state
correctional officals see Mitchum V. Foster
407 U.S. 225, 242 (1972). It is undisputed
that the PLRA does nothing to change the nature
of the federal action under § 1983; Prisoner's
who bring such actions after exhausting their
administrative remedies are entitled to de novo pro-
ceedings in the federal district court without any
deference (on issues of law or fact) to any ruling
in the administrative grievance proceedings. As expla-
ined by Senator Hatch when he introduced the
legislation on the Senate floor, the PLRA was
needed because the quantity of frivolous
suits filed by Prisoners was, in Senator
Hatch's view, making it difficult for "courts
to consider meritorious claims" 141 Cong.
Rec. 27042 (1995). He Continued. "Indeed,

Pg. 47

I do not want to prevent inmates from raising legitimate claims. This legislation will not prevent those claims from being raised." Ibid Similarly, as Senator Thurmond, a cosponsor of the bill, stated: "[The PLRA] will allow meritorious claims to be filed, but gives the judge broader discretion to prevent frivolous and malicious lawsuits filed by prison inmates." id., at 27044. "[T]he right of access to the courts is an aspect of the First Amendment right to petition the Government for redress of grievances." Bill Johnson's Restaurants, Inc. v. NLRB, 461 U.S. 731, 741 (1983) Accordingly, the constitution guarantees that prisoners, like all citizens, have a reasonably adequate opportunity to raise constitutional claims before impartial judges, see Lewis v. Casey, 518 U.S. 343, 351 (1996) moreover, because access to courts is a fundamental right, see id., at 346, government-drawn classifications that impose substantial burdens on the capacity of a group of citizens to exercise that right require searching judicial examination under the Equal Protection Clause, see Lyng v. Automobile Workers, 485 U.S. 360, 370 (1988) Defendant's interpretation of PLRA violates the U.S. constitution of Plaintiff's first, fifth and fourteenth amendment rights of access to courts and Equal Protection awarding them judgement would insult the Supreme law of land and make PLRA unconstitutional. Wherefore Plaintiffs

Pg:48

asks This Court to deny defendants motion
to Dismiss, desmiss SGT morrison, Terry
underwoods and Ernesto martinez credibility
as reliable witnesses, Defendants Sepearate and
alternative Defenses be denied, Defendants
atterney fees and cost of this aetion be
denied, Terry under Wood and Ernesto
martinez be Perseented for Penalty
of Perjury, To allow discovery so
Plaintiff can Prove exhuastion and
that the defendant's Policy is inadequate,
NON consistent and that Defendants
(officials) Play games when it comes to
exhausting administrative remedies, Zsshe
a order so that plaintiff may obtain a
Notarized Afficavit from Inmate marquis
Porler #786756 whom is bocated at the
Lawton correctional faeility, 8607 SE
flowermound Rd. Lawton, OK 73501, Through
Legal Correspondence Since Plaintiff appears
Pro se, under Fed.R. Civ.P. Rule 56(f),
also to interview inmate Porter and all
defendants witresses via telecommunciation.
also to order a outside examination by
a outside Dector Speeilized in Gender
dysphoria, Amanda Kleeman, LPC, NCC, MS
(918) 779-3754, to distinguish the
False medical reports pursuant to Fed.
R. Civ.P. Rue 35, for this relief
Plaintiff does Pray,

P.49.

Respectfully submitted, this 3rd day
of march, 2020.
Lamoge M. Johnson
O.S.P. 3 C-4-1
P.O. Box. 97
mcalester, ok 74502

Date: 3-3-20

Certificate Of service

I hereby Certify that a Copy of
the foregoing, Pleading / documents was
mailed to:

○ Clerk, United States District for the
Eastern District of Oklahoma, P.O. Box:
607, muskogee, ok 744dr2

○ Darrell L. Moore, OBA 6332
P.o. Box: 368
Pryor, OK 74362
a 3 , ___ , 2020